INDUSTRIAL TRUST COMPANY, *Tr. vs.* JOHN R. COTTAM.

JULY 25, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J.   This is an action of assumpsit by the trustee under the will of Frederick T. Rogers, who at the time of his death was the lessor under a certain written lease of real estate, against the lessee under that lease to recover unpaid rent for such real estate and certain taxes thereon which the lessee was obligated to pay but had not paid.   The case was tried on the general issue before a jury in the superior court; and at the conclusion of evidence for both parties, the trial justice, on the motion of the plaintiff, directed a verdict in its favor in the amount of $13,400.98.

The case is now before us on the defendant's bill of exceptions, in which the only exceptions stated are to this direction of a verdict; to the ruling of the trial justice in refusing to permit the defendant to testify in answer to a certain question put to him by his attorney; and to the ruling of the trial justice in refusing to permit such testimony to be given after the question of its admission had been further argued.

The lease was made on October 3, 1922 and the term created thereby was for ninety-nine years, from January 1, 1923 to December 31, 2021, inclusive.   By a separate written agreement, incorporated in the lease by reference, the rent was fixed at the rate of $3600 a year, payable $300 at the end of each month, for the first ten years, from January 1, 1923

to December 31, 1932, inclusive; and at the rate of $4200 a year, payable $350 at the end of each month, for the second period of 10 years, from January 1, 1933 to December 31, 1942, inclusive. By the lease the lessee was also required to pay, among other charges, the annual taxes on the real estate.

The lessee entered into possession of the leased premises under the lease and continued to occupy them as lessee until January 7, 1937, when the plaintiff took possession of them from him, in accordance with the lease, for nonpayment by him of the rent and other sums to be paid by him under the lease, on which he had long been heavily in arrears. There is no doubt but that the plaintiff is entitled to recover something from the defendant, but the amount is in dispute.

On August 11, 1932, the lessor wrote to him that on April 26, 1932 the lessor had agreed to make a reduction of $50 a month in the rent until January 1, 1933, provided that such rent was paid by the tenth of each month. The lessor stated, in the same letter, that that was the third time, in four months, that the lessee had failed to make such payments upon the date agreed upon, and that in the future the latter must conform to the terms of the lease and to the "agreements regarding the temporary reduction of the rent" or the offer of such reduction would be rescinded.

The lessor died on August 24, 1932, leaving a will which was duly probated and under which the plaintiff became executor and trustee. In the latter capacity it succeeded to the title, rights and obligations of the lessor under the lease here involved. On October 4, 1932, it wrote to the defendant a letter in which it acknowledged the receipt from him of a check for $250, covering the August rent at the reduced rate, and protested that he had not been paying each month's rent by the tenth of the next month in accordance with the terms of the agreement, above referred to, for a temporary reduction of the rent.

On February 23, 1933, the plaintiff and the defendant entered into a written agreement that the rent for the current year ending December 31, 1933 should be $3600, payable in equal monthly installments, but that he could defer the payment of $600 of that sum and pay this deferred portion, without interest, in four equal payments on December 31 of each of the four successive years beginning with 1934.

On January 7, 1937, as above stated, the plaintiff took possession of the leased premises. On February 2, 1937, the taxes on the property for 1934, 1935 and 1936 being still unpaid, the plaintiff paid them to the city treasurer, together with accrued interest and costs, the whole amount being $2926.62, and charged this to the defendant's account. On February 8, 1937, it by letter notified him of this payment and stated that the overdue rent was $9,104.03 and that unless arrangements were made at once to commence making payments on these amounts, action would be taken to collect them. No such arrangements having been made, the present action was begun.

In its bill of particulars of the amounts claimed by it to be owed to it by the defendant for rent and taxes, the plaintiff recognizes the agreement above stated of February 23, 1933, for reduction of rent for the calendar year 1933; and it charges for rent at the reduced rate only. But from December 31, 1933, it charges for rent at the rate of $4200 per year, the rate fixed for the second decade in the written agreement incorporated by reference in the lease.

The checks from the defendant to the plaintiff which were introduced in evidence and were admittedly given, received and cashed as payments of rent accruing under this lease for the period after December 31, 1932, and the first of which is dated February 16, 1933, are for $250 each up to and including one dated July 28, 1933. These checks for $250 are one for each of the first six months of 1933. After that date the checks are, with very few exceptions, two each month,

beginning with September 1, 1933, and ending with September 29, 1934; and thereafter and until December 7, 1936, they are, with very few exceptions, one each month; and all these checks after July 1933 are for $125 each, except for a check of March 31, 1934 for $200, one of April 4, 1934 for $50 and one of July 31, 1934 for $250. Up to and including the check of June 30, 1933, which is described thereon as in full payment of "May Rent Broad Street Property", each of these checks is marked as being in payment of a certain month's rent for this property. Most of the others are marked "Rent Broad Street Property."

Mr. William Metcalf was a trust officer of the plaintiff trust company, and as such was in charge of the matter of this lease from a date soon after the death of the lessor until the lease was terminated. He died, however, before the trial of this case. On November 19, 1935, in behalf of the plaintiff, he sent a letter to the defendant in which he wrote as follows: "We acknowledge your letter of November 18th, setting forth a record of receipts and disbursements for one year ending October 31, 1935, covering the properties at the corner of Broad and Franklin Streets. We understand that you are to furnish us each month with a monthly record of such receipts and disbursements covering the aforementioned properties." According to the defendant's evidence, these monthly statements were thus furnished by the defendant to the plaintiff.

At the trial, after the introduction of the above-mentioned evidence of the checks for rent and of the correspondence with Mr. Metcalf about the records of the receipts and disbursements of the defendant, the latter, while testifying, was asked by his attorney how it came about that he was to furnish the plaintiff with these monthly records of receipts and disbursements for the year ending October 31, 1935; and he answered that he saw Mr. Metcalf, around September of 1934, "he thought it was". He then added: "and the situation was getting terrible. There was three

or four stores unoccupied, and I couldn't do nothing. I saw I got to have the rent reduced, or I couldn't carry on." He testified that he said this to Mr. Metcalf in the conference; and that after the conference he, the defendant, sent $125 every month.

Later in the trial the defendant's attorney asked him the following question: "Will you tell the jury how it came about that you furnished the bank this monthly statement of income and expenses, and also in October of 1934 began and continued to pay only $125.00 per month?" On objection by the plaintiff's attorney to this question, the defendant's attorney then stated that the purpose of this question was to bring out testimony to an oral agreement to reduce the rent.

The plaintiff's attorney then pressed his objection to the interrogation; and the question of the admissibility of such testimony to prove an executed oral agreement reducing the rate of rent under a lease that was in writing, as required by the statute of frauds, was discussed by the attorneys and the trial justice. He then sustained the objection for the plaintiff; and an exception by the defendant to this ruling was noted.

Further discussion on the same subject ensued, in the course of which the defendant's attorney made a statement to the effect that he was prepared to prove that the plaintiff had told the defendant that it would accept $125 a month rent, provided that the defendant did certain things, including the furnishing of monthly statements of income and outgo. In our judgment the above statement by the defendant's attorney, when it is considered in connection with evidence for the defendant previously introduced and the colloquy between him and the trial justice, constituted, in substance and effect, an offer to prove an executed oral agreement made by the plaintiff with the defendant, upon a valu-

able consideration, to accept rent at the reduced rate of $125 per month in full payment of accruing rents.

Yet the trial justice adhered to his former ruling and excluded the offered evidence on the sole ground that no evidence of any oral agreement was admissible under the statute of frauds. To this ruling also the defendant had an exception noted.

These exceptions raise the decisive question of law in this case, as it stands before us. This question is whether, when a lessor of real estate, under a lease which is in writing as required by the statute of frauds, has brought an action against the lessee for alleged unpaid arrears of rent during a certain period of the term of the lease, such evidence as was offered and excluded in this case is admissible in defense as to the rent for a certain part of that period. Such evidence is that for a new and valuable consideration, furnished by the lessee to the lessor, there was a new, *oral* agreement between the parties, by which, for such period, the rent was to be paid and received at a reduced rate as payment in full; and that this agreement was fully performed as to such part of the period. We are of the opinion that according to sound principles and the great weight of authority such evidence is admissible for that purpose.

The following authorities support the rule that in defense to an action for rent for a certain period of the term of such a lease oral testimony is admissible to prove that for a new and valuable consideration there was such an agreement, covering that period; and that this agreement was fully executed. *Doherty* v. *Doe,* 18 Colo. 456; *Snow* v. *Griesheimer,* 220 Ill. 106, 77 N. E. 110; *Eisenberg* v. *Battenfeld Oil Co.,* 251 Mich. 654, 232 N. W. 386. See also annotations in L. R. A. 1915B, 66, and 43 A. L. R. 1451, at 1458; and 2 Williston, Contracts, (Rev. ed.) § 592.

Similar evidence has also been admissible in an action brought to recover the amount of payments to be made at

certain regular intervals of time under an agreement in writing under the statute of frauds, other than a lease. See *Denham* v. *Walker*, 93 Ga. 497, 21 S. E. 102; *Vigelius* v. *Vigelius*, 169 Wash. 190, 13 P. 2d. 425.

A similar rule also seems to be supported, by at least the greater weight of authority, as to evidence of an oral, executed agreement, on a new and valuable consideration, for the modification of a written agreement, under the statute of frauds, for the sale and purchase of real estate. *Durdahl* v. *Tostenson*, 150 Minn. 415, 185 N. W. 494; *Halpern* v. *Shurkin*, 98 N. J. Eq. 28, 129 A. 487; *Gerard-Fillio Co.* v. *McNair*, 68 Wash. 321, 123 P. 462.

There is also authority in support of a rule that such an oral agreement, though without valuable consideration, for a reduction in the sums of money to be paid regularly by one party to the other, under an agreement in writing as required by the statute of frauds, is a defense to the former party against the latter in an action on the original agreement, so far as concerns payments at the reduced rate made by the former and accepted by the latter as full payments. Among cases applying such a rule are *McKenzie* v. *Harrison*, 120 N. Y. 260, 24 N. E. 458; *Meyers* v. *K. of P. Bronx Temple Ass'n, Inc.*, 194 App. Div. 405; *Bowman* v. *Wright*, 65 Neb. 661, 91 N. W. 580.

There is also authority to the contrary and it is not necessary for us in the instant case to decide whether this last rule is correct or not, because the offer which was made in behalf of the defendant to prove an oral agreement for a reduction of the rent, and which was denied, included an offer to prove a valuable consideration for such agreement, and that such agreement was executed.

Whether the defendant's attorney, if he had been permitted to introduce evidence in accordance with his offer, would have been able to do so, we of course do not know. But

408

we are of the opinion that the trial justice was in error in denying the offer and that the plaintiff, for that reason, is entitled to a new trial. We therefore do not need to discuss the defendant's first exception, which was to the direction of a verdict for the plaintiff.

The defendant's exceptions 2 and 3 are sustained, and the case is remitted to the superior court for a new trial.

*John A. Tillinghast,* for plaintiff.

*Sisson & Fletcher, Fred Brosco, James B. Littlefield,* for defendant.